# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD J. JULIAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:08 CV 1715 (MRK) |
| | : | |
| SECURITAS SECURITY SERVICES | : | |
| USA, INC. and DOMINION NUCLEAR | : | |
| CONNECTICUT, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

This case arises out of the termination of Plaintiff Richard Julian from his job as a security guard at Defendant Dominion Nuclear Connecticut, Inc.'s ("Dominion's") Millstone nuclear power station in Waterford, Connecticut.  Mr. Julian was employed by Defendant Securitas Security Services USA, Inc. ("Securitas"), which has a contract with Dominion to provide security guards at Millstone.  He was terminated after it was discovered that someone had accessed pornography on a shared computer at Millstone while logged in under Mr. Julian's username.  Mr. Julian claims that the true reason for his firing was age discrimination, and that he was defamed by Dominion and Securitas in the process.  As a result, he brings claims of defamation against both Defendants, age discrimination against Securitas, negligent infliction of emotional distress against Securitas, and intentional infliction of emotional distress against both Defendants. *See* Pl.'s First Am. Compl. [doc. # 56].  Dominion and Securitas have filed motions for summary judgment on all claims.  *See* Securitas Mot. for Summ. J. [doc. # 59]; Dominion Mot. for Summ. J. [doc. # 60].  After oral argument on March 29, 2010, and for the reasons that follow, the Court GRANTS Dominion's

Motion for Summary Judgment [doc. # 60], and GRANTS in part and DENIES in part Securitas's Motion for Summary Judgment [doc. # 59].

## I.

The Court assumes the parties' familiarity with the facts of this case, and thus recites them here only briefly; other facts will be introduced as needed during the Court's discussion of the various claims.  As previously mentioned, Mr. Julian was a security guard employed by Securitas and stationed at Millstone.  Dominion allowed the guards at Millstone to use shared computers placed in ready rooms, and each guard was provided with an account (i.e., a specific username and password).  Mr. Julian's username was "rich543."

In the Fall of 2006, two of these ready room computers – the computer located in the Unit 1 ready room (the "Unit 1 Computer," sometimes also referred to by the parties as "Disk Drive Russia"), and the computer located in the Unit 3 ready room (the "MP4 Computer") – began to experience problems.  Edmund Cohn, of Dominion's Information Technology (IT) Department, analyzed the Unit 1 and MP4 hard drives and found a virus on the Unit 1 drive, but no evidence of virus or malware on the MP4 drive.[1]  He also pulled a sample of pornographic photographs associated with several usernames from the MP4 drive – ten of which were associated with Mr. Julian's username – and attached them to an email (summarizing the results of his analysis) to Karen Guliano, another Dominion IT employee.  It is undisputed that all ten photos were accessed virtually simultaneously by the user in question.  According to Mr. Julian, this suggests that they were "pop-

---

[1] Mr. Julian claims that the MP4 Computer was in fact infected with malware.  *See* Pl.'s Local R. 56(a)2 Statement [doc. # 75-1] ("Pl.'s 56(a)2 (Dominion)") ¶ 18.

ups," or the result of a virus or malware.[2]

Ms. Guliano forwarded Mr. Cohn's email message to Carl Cannella, Dominion's IT representative responsible for managing the computer services provided to Securitas at Millstone. Mr. Cannella then passed the information on to Securitas personnel – specifically Dennis Smith, Operations Supervisor for Securitas at Millstone, and James Pandolfo, Project Manager for Securitas at Millstone. There is some dispute about what Mr. Cannella said to these Securitas employees. Dominion claims that Mr. Cannella told Securitas only that the photos could be tied to a username, but that there was no way to tell whether that user had actually been the one accessing the computer at the time or whether he had intended to download the photos. Mr. Julian, on the other hand, argues that Dominion essentially told Securitas that it was Mr. Julian who accessed the pictures and that he intended to do so. Most significantly, Mr. Julian also claims that Mr. Cannella told Mr. Smith that pop-ups could not have been responsible for the presence of the photos. *See* Pl.'s 56(a)2 (Dominion) [doc. # 75-1] ¶ 102.

Mr. Smith then investigated the computer use issue on behalf of Securitas. When Mr. Julian was questioned, he denied seeing any of the photos but did admit to accessing "noshit.com" (which is a humor website). This is relevant because the browsing history suggests that the photos were accessed around the same time that a person logged on as "rich543" conducted multiple searches for "ohshit.com" (which is decidedly *not* a humor website). *See* Dominion's Local R. 56(a)1 Statement [doc. # 60-2] ("Dominion 56(a)1") ¶ 30; Securitas's Local R. 56(a)1 Statement [doc. # 59-3] ("Securitas 56(a)1") ¶ 21. As part of the investigation, Mr. Smith also asked Mr. Cannella to help

---

[2] A "pop-up" is a new web browser window opened automatically by a website, rather than intentionally by the computer user. Pop-ups are usually used to display advertisements.

sort through the browsing history from a third computer ("Computer 3"), which had approximately 65,000 entries.  Mr. Cannella agreed to do so, and his sort revealed that 566 "suspicious" entries were associated with Mr. Julian's username – 20 of which were linked to AdultFriendFinder.com.  *See* Securitas 56(a)1 [doc. # 59-3] ¶¶ 24-26.

Based on the investigation, Securitas terminated Mr. Julian.  Defendants claim that the termination was precipitated by the pornographic images associated with Mr. Julian's username, and not by the 566 "suspicious" entries in his browsing history.  *See* Securitas 56(a)1 [doc. # 59-3] ¶ 31.  Mr. Julian disagrees.   He alleges that Securitas management understood Mr. Smith's recommendation to be based, at least in part, on the 566 "suspicious" entries.  *See* Pl.'s Local R. 56(a)2 Statement [doc. # 69-1] ("Pl.'s 56(a)2 (Securitas)") ¶ 31.  He also claims that the entries were not suspicious at all, and that AdultFriendFinder.com is not a pornographic site.  *See id.* ¶ 26.  Consistent with standard practice, Dominion's Executive Review Board (ERB) reviewed Securitas's decision to ensure that Mr. Julian was not fired because he had raised safety concerns.  The ERB found no indication that the firing was so motivated.

## II.

The summary judgment standard is a familiar one.  Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.

The Court begins with Dominion's Motion for Summary Judgment [doc. # 60]. Mr. Julian asserts two claims against Dominion – a defamation count (Count One), and a count for intentional infliction of emotional distress (Count Five). The Court grants summary judgment to Dominion on each of these claims.

## A.

Mr. Julian's defamation claim against Dominion rests on the following language in his Amended Complaint [doc. # 56]:

Some time in or about November of 2006, Dominion's Information Technology

Department advised the local management of Securitas that several of Securitas' security officers assigned to Millstone, including Mr. Julian, had accessed pornographic and sexually explicit websites using a Dominion computer while on duty. They further advised Securitas that one or more Securitas employees had disabled the computer firewall. In so doing, Dominion defamed the plaintiff by publishing to Securitas the false statement that Richard Julian had accessed pornographic and sexually explicit websites on a Dominion computer while on duty.

*Id.* ¶ 19. Dominion makes two arguments in support of its motion for summary judgment. First, Dominion argues that it did not publish a false statement, and thus Mr. Julian cannot establish a *prima facie* case of defamation. *See* Mem. of Law in Supp. of Dominion's Mot. for Summ. J. [doc. # 60-1] ("Dominion's Mem.") at 12-15. Second, Dominion asserts that the statements are protected by a qualified privilege. *See id.* at 15-20.

Mr. Julian rejoins with three arguments. First, he alleges that Dominion did in fact publish false statements. *See* Pl.'s Mem. of Law in Opp'n to Dominion's Mot. for Summ. J. [doc. # 75] ("Pl.'s Resp. Dominion") at 2-8. Second, Mr. Julian argues that there is no qualified privilege for intercorporate communications (that is, communications from Dominion to Securitas). *See id.* at 8-11. And third, he asserts that even if there is a qualified privilege for communications between Dominion and Securitas, the privilege was abused by Dominion and is therefore not available. *See id.* at 11-12.

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004). For a statement to be defamatory, it must be false. *See id.* at 228-29. Ordinarily, whether a statement is true or false is a question for the jury. *Id.* at 229.

Certain types of communications are subject to a qualified privilege, which serves to shield a defendant from liability for defamation. *See Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 628 (2009). As the Connecticut Supreme Court has explained:

> When considering whether a qualified privilege protects a defendant in a defamation case, the court must resolve two inquiries. . . . The first is whether the privilege applies, which is a question of law over which our review is plenary. . . . The second is whether the applicable privilege nevertheless has been defeated through its abuse, which is a question of fact.

*Id.* (internal citations omitted). One such qualified privilege covers "intracorporate communications in the context of employment decisions." *Id.* at 630; *see also Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 27-28 (1995). "Under this rule, communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business." *Gambardella*, 291 Conn. at 630 (internal quotation marks and citation omitted); *see also Torosyan*, 234 Conn. at 29. The Connecticut Supreme Court has explained that the purpose of the privilege is "to encourage the free flow of information necessary for efficient, intelligent employment decisions." *Gambardella*, 291 Conn. at 639.

However, this privilege can be defeated with a showing that the employer abused it – specifically, that the holder acted with "actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, i.e., publication of a false statement with bad faith or improper motive." *Id.* at 630.; *see also id.* at 633-34. Obviously, this standard is not satisfied by a negligent misstatement. *See id.* at 637. Ordinarily, "[w]hether a defendant has knowledge of the falsity of a defamatory statement is a question within the province

7

of the trier of fact." *Id.* at 638.

> Where . . . a defendant shows entitlement to a qualified or other conditional privilege, it will be presumed that the communication, though defamatory, was made in good faith and without malice in fact. . . .   The plaintiff bears the burden, at the summary judgment stage, of pointing to evidence that could rebut the presumption of good faith by showing a genuine issue of fact as to whether the statement was made with "malice in fact" [or actual malice].

*Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F. Supp. 2d 247, 262-63 (D. Conn. 2006) (internal quotation marks and citations omitted).

Before turning to the merits of Mr. Julian's claim, the Court notes that in responding to Dominion's arguments regarding the defamation claim, Mr. Julian relies in part on three allegedly defamatory documents published by Dominion.  *See* Pl.'s Resp. Dominion [doc. # 75] at 6-8. However, such allegations are outside the scope of Mr. Julian's Amended Complaint, and therefore cannot be used to defeat a motion for summary judgment.  *See, e.g.*, *Kloth v. Citibank N.A.*, 33 F. Supp. 2d 115, 121 (D. Conn. 1998) (holding, in the context of a motion to dismiss, that "[a]lthough the Second Circuit does not require in haec verba pleading, i.e., of the exact defamatory words, Fed. R. Civ. P. 8 requires that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself," and therefore the complaint must set forth facts "indicating what defamatory statements . . . were made, when they were made, or to whom they might have been made") (internal quotation marks and citations omitted).   The allegation of defamation in the Amended Complaint is based only on communications between Dominion's IT Department and Securitas.  *See* Am. Compl. [doc. # 56] ¶ 19.  The Amended Complaint makes no mention of Dominion's publication of defamatory documents.   The Court gave Mr. Julian an opportunity to amend his original complaint after discovery, and Mr. Julian availed himself of that

opportunity.  Therefore, he will be held to his Amended Complaint, and the Court will not consider the alleged defamatory documents advanced by Mr. Julian in opposition to Dominion's summary judgment motion.[3]

As to the merits of Mr. Julian's defamation claim, Mr. Julian has not shown that the alleged defamatory statements by Dominion were false.  The evidence suggests that Dominion simply told Securitas that Mr. Julian's username was associated with the pornographic photos, but that it could not say for sure whether Mr. Julian had actually been using the computer at the time the photos were accessed or whether he intended to access said photos.  Nevertheless, because the Court concludes that Dominion is entitled to the qualified privilege, the Court need not definitively decide the issue of truthfulness and will assume for the purposes of this argument that Dominion did in fact publish false statements.

Mr. Julian argues that the privilege extends only to *intra*corporate communications, and that communications between Dominion and Securitas were *inter*corporate.  Mr. Julian is wrong.  Courts have applied a qualified privilege to intercorporate communications.  *See Miron v. Univ. of New Haven Police Dep't*, 284 Conn. 35, 43-47 (2007) (in the context of references from a former employer to a potential future employer); *Hanna v. InfoTech Contract Svcs.*, No. 3:01CV680 (SRU), 2003 WL 2002773, at *10 (D. Conn. Apr. 21, 2003), *aff'd by* 91 Fed. Appx. 737, 738 (2d Cir. 2004) (in the context of communications between Pfizer and a company providing IT services to Pfizer).  Given the policy underlying  the privilege, it is not at all surprising that it would apply to intercorporate communications in certain circumstances.  Given the relationship between Dominion

---

[3] The Court also believes, although it does not decide, that Dominion would be protected by the qualified privilege even if the documents were considered as part of his defamation claim.

and Securitas, they needed to be able to exchange information not only within but between their individual companies in order to make "efficient, intelligent employment decisions," *Gambardella*, 291 Conn. at 639.  Therefore, the Court concludes that Dominion's communications to Securitas were protected by a qualified privilege.

Nor has Mr. Julian shown that Dominion abused the privilege.  While he makes vague assertions about a conspiracy between Dominion and Securitas to target him, *see* Pl.'s Resp. Dominion [doc. # 75] at 11-12, he presents no evidence to support his speculations.  Mr. Julian even testified at his deposition that he has no evidence of malice or bad faith by Dominion.  *See* Julian Dep. [doc. # 78-10] at 77, 103.  At most, Mr. Julian has presented some evidence that the investigation by Dominion and Securitas was flawed in certain respects, perhaps even to the point of negligence.  But such evidence is not sufficient to support a finding of actual malice.  *See Dickinson*, 431 F. Supp. 2d at 263; *Oski v. Federal Express Corp.*, No. 3:07CV1082 (WWE), 2009 WL 3257777, at *6 (D. Conn. Oct. 7, 2009).  Therefore, based on the qualified privilege for corporate communications, the Court grants Dominion's motion for summary judgment on Mr. Julian's defamation claim.

**B.**

The Court also grants Dominion's motion as to Mr. Julian's claim for intentional infliction of emotional distress.  For Mr. Julian to prevail on such a claim, he must prove the following four elements:

> (1) [T]hat the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." *Id*. (internal citation omitted).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal quotation marks and citation omitted). It requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id*.

Mr. Julian does not offer any evidence of conduct on the part of Dominion that was "extreme or outrageous." As with his argument in support of his claim of malice in the defamation context, he relies on unsubstantiated allegations that Dominion intended to single him out for discipline, as well as assertions that Dominion was negligent in its communications to Securitas. *See* Pl.'s Resp. Dominion [doc. # 75] at 14-15. Again, there is simply no evidence that Dominion targeted Mr. Julian.

As previously mentioned, Dominion may have been less than supremely diligent in its communications with Securitas. In particular, Dominion failed to include the date and time stamps of the pornographic images when it sent them to Securitas, and that information would have showed that the pornographic images were all downloaded essentially simultaneously. *See id*. at 14; Dominion's Reply to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [doc. # 83]

("Dominion's Reply") at 9.  This information might have helped to support Mr. Julian's assertion that the photographs were the result of a "pop-up" or a virus.  However, even accepting Mr. Julian's account of this and other alleged failures by Dominion in the course of the investigation, any negligence by Dominion does not approach the type of extreme behavior required for an intentional infliction of emotional distress claim.  *See Perodeau v. City of Hartford*, 259 Conn. 729, 750 (2002) (holding, in the context of a negligent infliction of emotional distress claim, that "[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior"); *Day v. Seacorp, Inc.*, No. 550385, 2002 WL 31050891, at *3 (Conn. Super. Ct. Aug. 13, 2002) (quoting the above language from *Perodeau* in the context of an intentional infliction of emotional distress claim, and holding that a termination that was wrongfully motivated and based on an inadequate investigation did not amount to extreme and outrageous conduct).

If Mr. Julian presented evidence that Dominion's conduct was part of a scheme to discredit him, that would be another story – but he has no such evidence, only speculation.  Therefore, Dominion's motion for summary judgment on Mr. Julian's intentional infliction of emotional distress claim is granted.  As the Court has granted Dominion's Motion for Summary Judgment [doc. # 60] in its entirety, Dominion is dismissed as a Defendant in this case.

## IV.

The Court turns next to Securitas's Motion for Summary Judgment [doc. # 59].  Mr. Julian alleges four counts against Securitas – a defamation claim (Count Two), an age discrimination claim (Count Three), a negligent infliction of emotional distress claim (Count Four), and an intentional infliction of emotional distress claim (Count Six).  The Court grants summary judgment on the negligent infliction of emotional distress claim and denies summary judgment on the other three

claims.  Given the genuine issues of materials fact, there must be a trial of those three claims.

### A.

Mr. Julian brings his claim of age discrimination under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq*., and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. §§ 46a-60 *et seq*.  Securitas advances two arguments in opposition to these claims: (1) Mr. Julian has failed to establish a *prima facie* case of discrimination because none of the "similarly situated" individuals he relies on were actually similarly situated; and (2) even if he has established a *prima facie* case, he has not presented any evidence to suggest that Securitas's valid reason for firing him was really a pretext for discrimination.  The Court disagrees with Securitas on each argument.

The CFEPA analysis is identical to the analysis under the ADEA, so they can be considered together.  *See, e.g.*, *Perugini v. Stryker Orthopaedics*, No. 3:08CV404 (MRK), 2009 WL 3254492, at *3 (D. Conn. Oct. 6, 2009).  Both claims are governed by the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis.  Under this scheme "a plaintiff must establish a prima facie case of disability discrimination; if he does so, the burden shifts to the defendant to show through the introduction of admissible evidence a legitimate, non-discriminatory reason for its action. . . .  If the defendant satisfies its burden, the plaintiff must then produce evidence showing that the defendant's asserted reason is pretextual," and that the defendant was actually motivated by discrimination.  *Basso v. Potter*, 596 F. Supp. 2d 324, 332 (D. Conn. 2009) (Kravitz, J.) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

Plaintiff's initial burden to establish a *prima facie* case is minimal.  *See Berube v. Great Atlantic & Pacific Tea Co.*, 348 Fed. Appx. 684, 686 (2d Cir. 2009) (summary order); *Byra-*

*Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 243 (D. Conn. 2008) (Kravitz, J.).

"Once a plaintiff sets forth a prima facie claim of discrimination, 'a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action.'" *Byra-Grzegorczyk*, 572 F. Supp. 2d at 243  (quoting *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002)).  If the defendant offers such a reason, "the presumption of discrimination created by the prima facie case drops out of the analysis, and [the defendant] will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Mario*, 313 F.3d at 767 (internal quotation marks and citation omitted).  "The Court must not rely solely on the plaintiff's rebuttal of the employer's explanation but must examin[e] the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Byra-Grzegorczyk*, 572 F. Supp. 2d at 243 (internal quotation marks and citations omitted).

In this case, Securitas argues that Mr. Julian has not met his *prima facie* burden.  *See* Securitas's Mem. of Law in Supp. of Mot. for Summ. J. [doc. # 59-1] ("Securitas's Mem.") at 20-25. To establish a *prima facie* case under the ADEA, "a plaintiff must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). Securitas concedes that Mr. Julian has satisfied the first three prongs, *see* Securitas's Mem. [doc. # 59-1] at 19, but argues that he has not established an inference of discrimination.

In his Amended Complaint and his Response to Securitas's motion, Mr. Julian seeks to meet

his *prima facie* burden by showing that he was treated differently from other similarly situated, and younger, individuals.  *See* Am. Compl. [doc. # 56] ¶¶ 26-27; Pl.'s Mem. of Law in Opp'n to Securitas's Mot. for Summ. J. [doc. # 69] ("Pl.'s Resp. Securitas") at 11.  A plaintiff can raise an inference of discrimination in an ADEA case by showing that younger, "similarly situated" employees were treated more favorably.  *See Berube*, 348 Fed. Appx. at 686.

> Employees used as comparators in such an analysis need not be identically situated, but only must be similarly situated in all material respects. . . .  "What constitutes 'all material respects' . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."

*Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)) (internal citations omitted).  A plaintiff need not demonstrate that the conduct of the comparators was identical, just that it "was of 'comparable seriousness.'" *Id.* at 687 (quoting *Graham*, 230 F.3d at 40).  The Second Circuit has cautioned courts not to be too rigid when determining whether a comparator is similarly situated.  "What constitutes 'all material respects' . . . varies somewhat from case to case," and "courts should make an independent determination of the factors relevant to each case." *Graham*, 230 F.3d at 40 (internal quotation marks and citation omitted).  "Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*  "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Mr. Julian relies on several comparators.[4]  One is a 25-year-old Securitas guard who accessed

---

[4] The Court will not use their names so as to protect their privacy.

pornography and saved it to a disk using a Dominion computer in Spring 2006; that individual was suspended for only two days.  Pl.'s Resp. Securitas [doc. # 69] at 17-18.  Five other guards, ages 23-38, were investigated along with Mr. Julian for accessing possibly inappropriate websites, including AdultFriendFinder.com, and were not disciplined at all.  Pl.'s Resp. Securitas [doc. # 69] at 18-20.  And three other guards, ages 22, 26, and 50, were the subjects of a separate investigation in Fall 2006 regarding unauthorized software.  It is unclear whether they were disciplined.  Pl.'s Resp. Securitas [doc. # 69] at 20-22.

Securitas attempts to show that each of these individuals is not an appropriate comparator to Mr. Julian.  It argues that the first guard was not similarly situated because he was not disciplined by the same individual.  However, this fact is not dispositive of the *prima facie* case inquiry.  *See Berube*, 348 Fed. Appx. at 686 ("Under the standard set forth in *Graham*, the fact that Berube had a different supervisor from the employees he cites as comparators does not appear sufficient in itself to preclude Berube from showing that he was subject to the same workplace standards and disciplinary procedures."); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) ("The magistrate judge interpreted [*Shumway v. United Oarcel Serv., Inc.*, 118 F.3d 60 (2d Cir. 1997),] to mean that another employee cannot be similarly situated to a plaintiff unless the other employee *had the same supervisor*, worked under the same standards, and engaged in the same conduct.  This was a misreading of *Shumway*.") (emphasis added).  Securitas cites *Jeunes v. Potter*, No. 08CV1215 (HBF), 2009 WL 2883060, at *11 (D. Conn. Sept. 3, 2009), for this proposition, but *Jeunes* pre-dates *Berube*.  After *Berube*, the fact that different employees were supervised and disciplined by different supervisors might make them inappropriate comparators depending on the particular facts involved, but it does not as a matter of law preclude the fact finder from making a comparison if the facts

16

suggests that a comparison is appropriate.  In this case, the first guard and Mr. Julian were both stationed at Millstone, they were both accused of accessing pornography on the ready room computers, and their alleged conduct was close in time.  On these facts, despite the fact that they had different supervisors, the Court cannot say that the first individual is not a valid comparator *as a matter of law* – this is a question that must be left to the jury.  *See Berube*, 348 Fed. Appx. at 686-87.

Securitas also argues that the conduct that Mr. Julian is accused of – downloading extremely obscene photographs – is qualitatively different from the alleged conduct of the five other guards investigated along with him.  This argument might be convincing if it were certain that Mr. Julian was responsible for downloading the photographs and that such conduct was the sole basis for his termination.  However, there is some uncertainty as to Mr. Julian's responsibility.  It also appears that the other inappropriate websites associated with his username – websites also associated with the usernames of the comparators – might have played a role in the decision to fire him.  Given these disputed factual issues, the Court cannot say that Mr. Julian's conduct was qualitatively different as a matter of law than that of other similarly situated individuals.

The Court does agree with Securitas that the final three individuals are not valid comparators, as they were investigated for completely unrelated conduct.  However, this still leaves Mr. Julian with six possible comparators, all younger than he was.  It is for the jury to decide whether they were actually similarly situated for the purposes of an age discrimination claim.

Because Mr. Julian has met his *prima facie* burden for the purposes of summary judgment, the Court must apply the other two steps of the burden-shifting analysis.  There is no question that Securitas has offered a legitimate non-discriminatory reason for Mr. Julian's termination.  Thus, the question is whether Plaintiff can satisfy the third step.  The Court believes that there is at least a

disputed issue of material fact on this question, based solely on the comparator evidence previously discussed. *See Graham*, 230 F.3d at 43 ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination. . . . Were a jury to find on these facts that there was disparate treatment in LIRR's disciplining of plaintiff when compared to similarly situated employees, it could also find that LIRR's proffer of a non-discriminatory reason for Graham's dismissal was pretextual. . . . Such would preclude the grant of summary judgment to the employer under the third prong of *McDonnell Douglas*.") (internal citations omitted).   Therefore, the Court denies summary judgment on Mr. Julian's age discrimination claim.

## B.

Mr. Julian's defamation and intentional infliction of emotional distress claims against Securitas survive summary judgment for similar reasons.   Like Dominion, Securitas argues that it did not publish any false statements, and that even if it did, it is entitled to the qualified privilege. But Mr. Julian has presented evidence that, on at least a few occasions, a Securitas employee communicated false information by suggesting that Plaintiff had accessed pornography 566 times – a misunderstanding based on the 566 "suspicious" entries associated with Plaintiff's username.  *See* Pl.'s Resp. Securitas [doc. # 69] at 2-3.   This evidence is sufficient to create a dispute of fact regarding truthfulness, which this Court must leave to a jury to resolve.

The Court agrees with Securitas that it would ordinarily be entitled to the qualified privilege.[5]

---

[5] Mr. Julian argues that statements made in front of a labor union representative who was present when Securitas employees interviewed Mr. Julian are not privileged.  Because the Court finds that there is a question of fact as to whether Securitas abused the privilege, it need not decide

However, there is a question of fact as to whether Securitas abused that privilege. If the jury were to conclude that Securitas's real motivation for terminating Mr. Julian was his age, they could also reasonably conclude that any defamatory statements made by Securitas employees were motivated by bad faith or an improper motive. These are questions for the jury. Therefore, the Court denies Securitas's motion for summary judgment on Mr. Julian's defamation claim.

For the same reason, the Court cannot grant summary judgment on Mr. Julian's intentional infliction of emotional distress claim against Securitas. Again, if the jury were to believe Mr. Julian's age discrimination claim and his claim of bad faith and improper motive regarding his defamation claim, the jury could find that certain of Securitas's conduct was "extreme and outrageous." The Court emphasizes that not every claim of discrimination or defamation will constitute intentional infliction of emotional distress. On the facts presented here, however, the Court is satisfied that this claim should be resolved by the jury.

Securitas also argues that Plaintiff cannot satisfy the fourth prong of the intentional infliction of emotional distress test – that his emotional distress was severe. Connecticut courts "have clearly stated that 'severe emotional distress' is 'mental distress of a very serious kind.'" *Le v. Saporoso*, No. HHDCV095028391S, 2009 WL 4069531, at *4 (Conn. Super. Ct. Oct. 19, 2009) (quoting *Muniz v. Kravis*, 59 Conn. App. 704, 708 (2000)).

> They have, however, not articulated a bright-line test for determining what constitutes severe emotional distress. . . . As such, most trial courts apply the standard set forth in the Restatement. The Restatement provides that "[emotional

---

this issue. However, it seems logical that the privilege would extend to a union representative attending the meeting on Mr. Julian's behalf. On the other hand, it is not clear what defamatory statements, if any, were made in the presence of the labor union representative. None of the seven alleged defamatory statements listed by Mr. Julian in his Response appears to have occurred during that particular interview. *See* Pl.'s Resp. Securitas [doc. # 69] at 2-4.

distress] includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that the liability arises. . . .  The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity."

*Id.* (quoting 1 Restatement (Second) Torts § 46 cmt. j) (internal citations omitted).  In this case, Mr. Julian was required to go home and explain to his wife and children that he was fired for having accessed pornographic websites.  It is a little difficult for the Court to imagine why that would not cause emotional distress, particularly where, as here, Mr. Julian adamantly denies that he did so.  Accordingly, Mr. Julian  has presented sufficient evidence of his emotional distress to survive summary judgment.  *See* Pl.'s Resp. Securitas [doc. # 69] at 35-36.

## C.

The Court does, however, grant summary judgment to Securitas on Mr. Julian's negligent infliction of emotional distress claim.  This claim is based solely on the "unreasonable delay" between the suspension pending investigation and termination.  *Id.* at 29.  Mr. Julian was suspended with pay on November 21, 2006 and terminated on March 30, 2007.  Securitas argues that this was not action taken in the context of termination of employment, and therefore Mr. Julian does not have a negligent infliction claim.  The Court agrees.

[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . .  This part of the . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants.  If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable.  Conversely, if the fear were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress

and, therefore, they would not be liable.

*Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446-47 (2003) (internal quotation marks and citations omitted).

In *Perodeau*, the Connecticut Supreme Court held that, in the employment context, a negligent infliction of emotional distress claim can only be based on conduct occurring in the termination of employment, and not conduct occurring within a continuing employment context. *See* 259 Conn. at 762-63. Furthermore, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Parsons v. United Tech. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88 (1997). "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Id*. at 88-89.

Of course, the doctrine described in *Perodeau* and *Parsons* begs the question of where to draw the line between ongoing employment and the termination process. Although there is no bright line, most courts that have considered the question have concluded that a disciplinary investigation falls within the category of ongoing employment, and thus cannot be a basis for a negligent infliction claim. After all, the investigation could conclude that the employee did not engage in behavior warranting termination. In fact, in *Perodeau* the Connecticut Supreme Court explicitly listed "disciplinary or investigatory action arising from actual or alleged employee misconduct" as one of the things an employee can expect in the context of an ongoing employment relationship. 259 Conn. at 757; *see also Dickinson*, 431 F. Supp. 2d at 260-61; *Dichello v. Marlin Firearms Co.*, No.

21

CV065002796, 2009 WL 2506329, at *3-*4 (Conn. Super. Ct. July 9, 2009); *Day*, 2002 WL 31050891, at *7. Therefore, because Mr. Julian's claim of negligent infliction of emotional distress is based on his suspension pending investigation, and not Securitas's conduct in the context of termination, the Court grants summary judgment on this claim.

### V.

In sum, the Court GRANTS Dominion's Motion for Summary Judgment [doc. # 60] in its entirety. Therefore, Dominion is no longer a Defendant in this case. The Court GRANTS in part and DENIES in part Securitas's Motion for Summary Judgment [doc. # 59]. Specifically, the motion is granted as to the negligent infliction of emotional distress claim, and denied as to the age discrimination, defamation, and intentional infliction of emotional distress claims. The Court will issue a separate trial scheduling order.


IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: April 19, 2010.**

22